IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America, *ex rel.* Robert Scott Dillard, | ) ) ) | Case No.: 6:16-cv-02948-JD |
| Plaintiff, | ) ) | |
| vs. | ) ) | **OPINION & ORDER** |
| Fluor Corporation, Inc., Fluor Enterprises, Inc., and Fluor Intercontinental, Inc. | ) ) ) | |
| Defendants. | ) ) ) | |

This is a False Claims Act ("FCA") case in which Plaintiff Robert Scott Dillard ("Plaintiff" or "Dillard") alleges *inter alia* Defendants Fluor Corporation, Inc., Fluor Enterprises, Inc., and Fluor Intercontinental, Inc. (collectively "Defendants" or "Fluor") presented or caused to be presented false or fraudulent claims to the United States for payment or approval. As part of this action, Dillard alleges Defendants violated 31 U.S.C. § 3730(h) when they terminated his employment after Dillard submitted a complaint to Fluor's compliance department. (DE 1, ¶ 124.) Fluor filed a Motion for Summary Judgment on this claim contending Dillard failed to show that retaliation was the "but-for" cause of his termination. (DE 146.) Dillard filed a response in opposition (DE 150), and Fluor filed a reply (DE 152). After reviewing the motion, memoranda, and the record, the Court grants Fluor's Motion for Summary Judgment (DE 29) for the reasons provided herein.

## BACKGROUND[1]

The facts viewed in the light most favorable to the Plaintiff are as follows. Fluor supported the United States military in Afghanistan under its Logistics Civil Augmentation Program ("LOGCAP") IV contract with the Army. In 2010, Dillard was assigned to work in Afghanistan under Task Order 5 to the LOGCAP IV contract. (DE 146-6.) Under Task Order 5, Fluor supported the military mission in Afghanistan, providing essentially every life-support service necessary to allow warfighters to do their jobs. (DE 146-8, ¶ 3.) One of Fluor's responsibilities was to manage property and materials furnished by the government or acquired by Fluor for use on the contract. (DE 146-6, 150, p. 8.) The Materials Management Group was the department within Fluor that handled this task. (DE 146-6.)

In 2015, Dillard served as a deputy to the director of Fluor's Materials Management Group. As early as May 2015, Fluor was aware that its costs exceeded its budget and that it would need to implement a Reduction in Force ("RIF"). (DE 146-14 and DE 150, pp. 7-8.) To help reduce costs, in late September 2015, Fluor Country Manager Mark O'Neill ("O'Neill") tasked the Director of the Materials Management Group, Gregg Gross ("Gross"), with reducing personnel levels in the Materials Management Group. (DE 146-1, p. 13.) In turn, Gross directed Dillard that they needed to start planning the RIF. (DE 150, p. 8.) Dillard prepared three possible courses of action for the Materials Management Group RIF. (DE 146-15.) On or around October 28, 2015, Gross and Dillard presented these three "initial proposals" to O'Neill: they included "light," "medium," and "heavy" options for personnel reductions in the Materials Management Group (which proposed eliminating 84, 102, and 132 positions, respectively). (DE 146-1, p. 14.) Each

---

[1]    Although the Court provides the below referenced facts, Plaintiff contends some are disputed. However, those disputes are either immaterial or unsupported. Any material fact identified in Plaintiff's brief—but properly disputed by Defendants—are omitted from this section unless specifically referenced.

option proposed a more streamlined department and maintained the Director and Deputy Director positions.  (DE 146-1, p. 15.)

In general, Gross accepted Dillard's recommendations.  (DE 146-1, p. 15.)  Gross also identified a handful of additional positions for elimination, which he discussed with Deputy Project Manager Preston Howard ("Howard") and Fluor Human Resources ("HR").  (Id.)  Gross identified four individuals to add to the RIF – Dillard and three of his staff members that were all part of the audit compliance team.  (DE 150-11.)  Fluor indicated through Gross and Holly Snow its 30(b)(6) witness that Dillard's position was eliminated because it was no longer needed due to the significant streamlining and realignment of functions within the Materials Management Group.  (DE 146-1, pp.15-16) ("We were realigning the organization from about 10 to 12 departments that were reporting up through the Deputy to my position to—three to four."). On the other hand, Dillard contends that testimony by Gross (and others) in support of this position "is after-the-fact pretext which is not credible," and instead, "Dillard was eliminated in retaliation for reporting potential fraud against the Government by Fluor."  (DE 150, p. 9.)

While Plaintiff disagrees with Defendants regarding who had the final authority on staffing decisions (DE 150, p. 10), Gross had the authority to make RIF decisions for the Materials Management Group unless he was overruled by O'Neill or Fluor leadership in Greenville, South Carolina. (DE 146-1, p. 16, ¶ 25.)  Dillard alleges that when Gross made the RIF decision, Gross had "knowledge of [Dillard's] [prior complaint]" and "it is clear that the termination[] w[as] made as retaliation."  (DE 1, ¶ 98.)  Nevertheless, the RIF was implemented and approximately 100 Fluor employees and subcontractor employees were released from their employment with the Materials Management Group on Task Order 5 through Fluor's execution of the RIF.  See (DE

3

146-1, p. 17, ¶ 28.)  Fluor saved approximately $10 million in annual labor costs as a result of these reductions, and these cost savings were passed on to the Army.[2]

In July 2015, Dillard made a complaint to Justin Jones ("Jones"), a Fluor Senior Compliance & Ethics Specialist, regarding the accuracy of inventories conducted by the Materials Management Group.  (DE 146-19.)  Fluor policy requires that complainants' identities be kept confidential to the extent possible and only disclosed to individuals with a need to know, which is generally limited to Fluor counsel, investigators, witnesses, and employees needed to assist in the investigation.  (DE 146-17.)  Shortly after Dillard submitted his complaint, Jones learned that Dillard's complaint had been disclosed to Reeves, the former Director prior to Gross, who was outside of the group authorized to receive this information.  (DE 146-22.)  Jones advised Dillard about the disclosure and apologized that it had occurred.  (Id.)  Notwithstanding the inadvertent disclosure, Gross did not know Dillard made the complaint when Gross decided to eliminate the Deputy Director position (along with other positions).[3]  (DE 146-1, p. 21.)

## LEGAL STANDARD

**Federal Rule of Civil Procedure 56**

The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548,

---

[2]    According to Defendants, the elimination of Dillard's position alone resulted in nearly $50,000 in cost savings.  (DE 146-1, p. 17, n. 5.)

[3]    Dillard disputes the fact that Gross did not know he made the complaint and points to deposition testimony of Justin Jones in which he indicates that he copied Gross on an email to Juan Jones, who was responsible for signing off on inventory reports.  The testimony indicates that Mr. Gross was aware of an investigation but that he did not know the source of the investigation.  (DE 150-13, p. 16.)  Further, while Dillard does not dispute that no one specifically told Dillard that Gross knew that he was the person that raised the concerns related to the inventories; however, Dillard contends it would have been reasonable to infer that Gross knew Dillard had reported the concerns related to inventories given the inadvertent disclosure to Reeves of Dillard as the source of the complaint and that Justin Jones had informed Dillard that Gross was aware that a complaint had been raised.  (DE 150, p. 14.)

91 L. Ed. 2d 265 (1986).  "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law.  An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant."  Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted).  Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue.  Celotex Corp., 477 U.S. at 323.  Under this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion."  Wai Man Tom, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits."  Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2728 (3d ed. 1998)).  "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict.  "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations."  Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted).  A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party.  Id. at 659-60.

**DISCUSSION**

First, Fluor contends that it is entitled to Summary Judgment because Dillard fails to

establish a *prima facie* case of retaliation.  (DE 146, p. 16.)  This Court agrees.  Since Plaintiff

concedes that there is no direct evidence of retaliatory intent, the Court will apply the McDonnell

Douglas burden-shifting framework to the summary judgment motion.  See McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  To make out a *prima facie* FCA retaliation

case, ". . . under Section 3730(h), a plaintiff must allege that (1) he engaged in protected activity,

(2) the employer knew about the activity, and (3) the employer took adverse action against him as

a result."  Smith v. Clark/Smoot/Russell, A JV, 796 F.3d 424, 433 (4th Cir. 2015).  If the employee

makes this showing, the burden shifts to the defendant to produce evidence of "a legitimate, non-

[retaliatory] reason for the adverse action."  Clinkscales v. Walgreen Co., No. 10-cv-2290, 2012

WL 80543, at *6 (D.S.C. Jan. 11, 2012) (citing Merritt v. Old Dominion Freight Line, Inc., 601

F.3d 289, 294 (4th Cir. 2010)).  The FCA penalizes only "a decision [that] was motivated by a

desire to retaliate for protected activity."  Armstrong v. Arcanum Grp., Inc., 897 F.3d 1283, 1290

(10th Cir. 2018).  Accordingly, the "decision-maker involved in the unfavorable personnel action"

must be "on notice of the alleged protected activity."  Nifong, 234 F. Supp. 3d at 755 (cinting

Conrad v. CSX Transp., Inc., 824 F.3d 103, 108 (4th Cir. 2016); accord United States ex rel. Chase

v. HPC Healthcare, Inc., 723 F. App'x 783, 792 (11th Cir. 2018) ("decision-makers" at employer

must be aware of protected activity).  "The knowledge of someone who had no role in the decision

is irrelevant to the motive for the decision."  Armstrong, 897 F.3d at 1290; see also Clinkscales,

2012 WL 80543, at *7 (focusing on the motivation of "the sole person who decided" to take the

alleged adverse employment action).

Plaintiff cannot survive summary judgment for two main reasons.  First, although Plaintiff

can satisfy the protected activity element of the *prima facie* test, he has not met "the employer

knew about the activity" prong of the test.  As an initial matter, absent evidence to the contrary,

the Court finds that Gross was the "decision maker" regarding the RIF employees to include

eliminating Dillard's position as part of the RIF.[4]  To that end, after Gross's arrival to Afghanistan,

Gross decided he did not need a deputy and eliminated Dillard's position.  Prior to Gross's arrival

in Afghanistan, in July 2015, Dillard made a complaint to Jones, a Fluor Senior Compliance &

Ethics Specialist, regarding the accuracy of inventories conducted by the Materials Management

Group.  (DE 146-19.)  Although it was Fluor's policy that complainants' identities be kept

confidential to the extent possible and only disclosed to individuals with a need to know, which is

generally limited to Fluor counsel, investigators, witnesses, and employees needed to assist in the

investigation that did not occur.  (DE 146-17.)  After Dillard submitted his complaint, Jones

learned that Dillard's complaint had been disclosed to Reeves, the former Director prior to Gross,

who was not authorized to receive this information.  (DE 146-22.)  Jones advised Dillard about the

disclosure.  Nevertheless, Gross testified that he did not know that Dillard had submitted the

complaint when he made the decision to include him in the RIF.  Further, Dillard has not produced

any evidence, direct or circumstantial, to rebut Gross's testimony.  To the contrary, Dillard simply

advances the theory that Gross knew Dillard had reported the concerns related to inventories given

---

[4]      Plaintiff suggests there is substantial evidence in the record to support his theory that "O'Neill and leadership in Greenville had the final approval and authority on staffing decisions."  (DE 150, pp. 8-9 and 27.)  Despite the fact that Plaintiff's Complaint contends that Gross made the termination decision (DE 1, ¶ 98), Plaintiff does not identify any evidence to support how O'Neill or Greenville provided any instructions regarding whom to select in the RIF to include Dillard.  Instead, the record shows that Gross did not need, nor did he obtain, "further sign-off" from O'Neill regarding his RIF decisions.  (DE 146-17, pp. 25-26.)

the inadvertent disclosure to the Reeves, and that Jones had informed Dillard that Gross was aware that *a* complaint had been raised.

Dillard's theory and speculation that Gross knew about his protected activity is not enough to create a genuine dispute of material fact. See Brackman, 72 F. App'x at 894; see also Riley v. Honeywell Tech. Sols., Inc., 323 F. App'x 276, 277 n.2 (4th Cir. 2009) (plaintiff's "self-serving contentions . . . were properly discounted by the district court as having no viable evidentiary support and as being insufficient as a matter of law" to survive summary judgment); Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). In contrast, this Court is persuaded by the Third Circuit's decision in Carr v. SRA International, Inc., where Third Circuit found that a company vice president, who was aware of the plaintiff's protected activity, "oversaw the RIF action, [but] she was not responsible for selecting [the plaintiff for the RIF,]" was therefore immaterial to the question of whether the plaintiff's inclusion in the RIF was retaliatory. Carr v. SRA International, Inc., 858 F. App'x 576, 578-79 (3d Cir. 2021). Like in Carr, O'Neill's knowledge cannot be imputed to Gross. Therefore, the record before the Court shows that Dillard has not made a *prima facie* showing that Gross knew about the protected activity.

Second, even if Dillard could establish a *prima facie* case of retaliation, Fluor has met its burden to produce evidence of a legitimate, non-retaliatory reason for Dillard's termination. FCA "[r]etaliation claims can be proven by either the submission of direct evidence of retaliatory animus or by use of the McDonnell Douglas burden-shifting framework." United States ex rel. Cody v. ManTech Int'l Corp., 746 F. App'x 166, 176 (4th Cir. 2018) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Under the McDonnell Douglas burden-shifting framework after the plaintiff establishes a prima facie case of retaliation, "[t]he burden of production then shifts to the

employer to articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010). "[I]f the employer carries this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reasons, but were a pretext for discrimination.'" Id. at 294.

Assuming *arguendo* that Dillard has established a *prima facie* case, Fluor has met its burden to produce evidence of a legitimate, non-retaliatory reason for Dillard's termination: the position he filled was eliminated in a department-wide RIF that was part of a broader effort to streamline Fluor's Task Order 5 staffing. The Materials Management Group, as one of the largest departments on the project, was identified as a potentially significant source of cost savings. To that end, Country Manager O'Neill tasked Gross with reducing the personnel in the Materials Management Group so that its staffing would be commensurate with the government's needs. As part of this process, Gross determined that the Deputy Director position then filled by Dillard was not necessary. Accordingly, the RIF was implemented, and Fluor saved approximately $10 million in annual labor costs to include nearly $50,000 in cost savings for Dillard's position. See n. 2, supra. This evidence sufficiently shows that Gross had a legitimate, non-retaliatory purpose for eliminating Dillard's position. Departmental reorganization and restructuring are valid and non-retaliatory management decisions. Consequently, Fluor has met its burden at this stage of the McDonnell Douglas framework.

Furthermore, Dillard's retaliation claim also fails on the third step of the McDonnell Douglas burden-shifting framework because he fails to forecast sufficient evidence of pretext. "[T]o show pretext and survive summary judgment, [the plaintiff] must point to admissible record evidence that [the employer's] stated justification is 'dishonest or not the real reason for [his]

9

termination.'" <u>Nifong</u>, 234 F. Supp. 3d at 759 (<u>quoting</u> <u>Laing v. Fed. Express Corp.</u>, 703 F.3d 713, 722 (4th Cir. 2013)). There is no such evidence here.  Therefore, Fluor is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment (DE 146) and dismisses Count Five, Retaliation under the False Claims Act, of this action.

**AND IT IS SO ORDERED.**

_____
Joseph Dawson, III
United States District Judge

March 31, 2022
Greenville, South Carolina